319 S.E.2d 782

Annetta **MYERS**

v.

The Hon. John R. **FRAZIER**, etc.

Annetta **MYERS**

v.

Larry E. **LOSCH**, etc., et al.

Nos. 16114, 16111.

Supreme Court of Appeals of West Virginia.

June 27, 1984.

Dan L. Hardway, Charleston, for appellant.

Jesser & Harrington, Keenan, Gallaher & Keenan, Fayetteville, Jack Thompson, Oak Hill, John W. Swisher, Chauncey H. Browning, Atty. Gen., and Greg W. Bailey, Deputy Atty. Gen., Charleston, for appellees.

MILLER, Justice:

Annetta Myers, as a concerned citizen and resident of Fayette County, West Virginia, seeks to have three Fayette County deputy sheriffs tried on charges of sexual assault, false swearing, and related offenses. She has filed separate petitions for writs of prohibition and mandamus before this Court,[1] which we have consolidated for purposes of argument and this opinion. The writ of prohibition sought by the petitioner is directed at Special Judge John Frazier[2] to prohibit him from entering a final order accepting separate agreements presented by Deputies Leland Dempsey and Dave Brown, which recommended a resolution of the charges filed against them. Further relief is sought to prohibit the entry of any order granting immunity to Deputy Rick Pennington. The petitioner seeks a writ of mandamus against Special Prosecutor Larry Losch[3] requiring him to withdraw his promise of immunity to Pennington and to have Pennington indicted and prosecuted on sexual assault and false swearing-related charges.

On October 13, 1982, Pennington, Dempsey, and Brown allegedly forced a 24-year-old woman to perform oral sex on each of them in the bedroom of her trailer.[4] At the time of the alleged offense, the three deputies were on duty, in uniform, and armed with guns. At some time during the ensuing investigation, Special Prosecutor Losch orally agreed to grant immunity to Pennington if he would cooperate in the prosecution of Dempsey and Brown. Pennington agreed to cooperate and was never indicted for any crime. No order approved by a court has been entered granting Pennington immunity.

On March 3, 1983, Dempsey and Brown were indicted for first degree sexual assault, false swearing, and conspiracy to commit false swearing, but this indictment was later found to be defective and was dismissed upon Brown's motion. On September 14, 1983, Dempsey and Brown were again indicted for first degree sexual assault. Special Prosecutor Losch also filed a five-count information against Dempsey and Brown on October 12, 1983, charging each with conspiring to commit false swearing and additionally charging Brown with procuring false swearing and Dempsey with three counts of committing false swearing. These false swearing charges

1. Retired Justice Fred H. Caplan was designated pursuant to Section 8 of Article VIII of the West Virginia Constitution to participate in this case upon the decision of Justice Richard Neely to disqualify himself. Justice Darrell V. McGraw, Jr., did not participate in this case.

2. Upon the voluntary disqualification of the two judges of the Twelfth Judicial Circuit, the Chief Justice of this Court, in accordance with Section 3 of Article VIII of the West Virginia Constitution, assigned Judge Frazier from the Ninth Judicial Circuit to hear these cases.

3. After the prosecuting attorney of Fayette County disqualified himself, Larry Losch, prosecuting attorney for Nicholas County, was appointed by Judge J. Zane Summerfield of the Twelfth Judicial Circuit to act as special prosecutor in pursuing criminal charges against these three deputy sheriffs, who are also respondents in this case.

4. We emphasize the fact that the petitioner is not the victim of the alleged sexual assault.

arose out of proceedings before the Fayette County Grand Jury in February, 1983, in which Pennington and Dempsey denied ever having sexual intercourse with the 24-year-old woman. Brown asserted his Fifth Amendment right to remain silent.

Prior to trial, Dempsey and Brown were able, through their respective attorneys, to negotiate agreements with Special Prosecutor Losch. In the written plea agreement presented to Special Judge Frazier, Dempsey agreed to plead nolo contendere to one count of false swearing in return for the dismissal with prejudice of the remaining counts in the information and the sexual assault indictment. The agreement further stated that the prosecutor and Dempsey agreed that probation for a period of not more than five years would be appropriate, with the imposition of any possible fine left up to the court. Brown's agreement indicated that in return for the dismissal with prejudice of the sexual assault indictment and all relevant counts of the misdemeanor information, Brown agreed not to be a county or city police officer in Fayette County, West Virginia for a period of five years.

Special Judge Frazier examined Dempsey, pursuant to Rule 11 of the West Virginia Rules of Criminal Procedure, and determined that the nolo contendere plea was voluntarily and intelligently made. He orally accepted both of the proposed agreements, sentenced Dempsey to five years probation and fined him $1,000. Ms. Myers filed her petitions with this Court prior to the entry of any final written judgment by Special Judge Frazier.

**5.** It is clear that a defendant has no constitutional right to have his case disposed of by way of a plea bargain or to have his guilty plea accepted. *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 43 (1977); *North Carolina v. Alford,* 400 U.S. 25, 38 n.11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162, 172 n.11 (1970). The United States Supreme Court has even suggested that state and federal governments are free to abolish guilty pleas and plea bargaining. *Corbitt v. New Jersey,* 439 U.S. 212, 223, 99 S.Ct. 492, 499, 58 L.Ed.2d 466, 477 (1978). A summary of alternatives to plea bargaining, which also contains extensive references on the subject, can be found in Alschuler, *Implementing the Criminal Defendant's Right to Trial: Alterna-*

## I. THE PLEA PROCEDURE

We have sanctioned plea bargain concepts in a number of cases and have stated in *State ex rel. Gray v. McClure,* 161 W.Va. 488, 242 S.E.2d 704, 705 (1978), that "[p]lea bargaining has been a part of West Virginia law for at least forty-six years. *State v. Ward,* 112 W.Va. 552, 165 S.E. 803 (1932)." Until the adoption of Rule 11 of the West Virginia Rules of Criminal Procedure, effective October 1, 1981, the procedures surrounding the plea bargaining process were largely developed through case law. *E.g., Blackburn v. State,* 170 W.Va. 96, 290 S.E.2d 22 (1982); *State ex rel. Morris v. Mohn,* 165 W.Va. 145, 267 S.E.2d 443 (1980); *State v. Olish,* 165 W.Va. 145, 266 S.E.2d 134 (1980); *State v. Wayne,* 162 W.Va. 41, 245 S.E.2d 838 (1978); *Brooks v. Narick,* 161 W.Va. 415, 243 S.E.2d 841 (1978); *Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975); *State ex rel. Clancy v. Coiner,* 154 W.Va. 857, 179 S.E.2d 726 (1971).

With the advent of Rule 11, which is modeled after Rule 11 of the Federal Rules of Criminal Procedure, a detailed set of standards and procedures now exists governing the plea bargaining process. For example, we have held that:

> "West Virginia Rules of Criminal Procedure, Rule 11, gives a trial court discretion to refuse a plea bargain." Syllabus Point 5, *State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397 (1984).[5]

We need not for the purposes of this opinion make a comprehensive analysis of Rule 11. It will be sufficient to examine those provisions of Rule 11 that have a bearing on Dempsey's plea agreement.[6]

*tives to the Plea Bargaining System,* 50 U.Chi.L. Rev. 931 (1983).

**6.** A fundamental difference between the two written agreements in this case is that the one with Dempsey is made contingent upon his plea of nolo contendere. The agreement with Brown does not require him to enter a plea to any criminal charge. Since Rule 11(e)(1) requires a plea agreement to be based upon a defendant's plea of guilty or nolo contendere, the provisions of Rule 11 are only applicable to Dempsey's plea agreement. Brown's agreement, which obligates the special prosecutor to move for the dismissal of all pending criminal charges pursuant to Rule 48, is discussed in Part II.

■ First, Rule 11(b) makes it clear that a defendant has no absolute right to enter a nolo contendere plea:

"*Nolo Contendere.*—A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."

■ Second, under Rule 11(e)(2), the power is vested in the circuit court to accept or reject a plea agreement or to defer acting on it [7] until the court obtains a presentence report under Rule 32(c).[8] Furthermore, Rule 11(e)(4) spells out the procedure to be used when a court rejects a plea bargain.[9] Obviously, one purpose for the presentence report is to enable the court to obtain information with regard to the defendant's background in order to make an informed decision as to whether to accept or reject the guilty or nolo contendere plea.

Many jurisdictions have concluded generally that a court, in exercising its discretion to accept or reject a plea agreement, should consider whether the plea agreement is consistent with the public interest or, stated in a slightly different form, whether it promotes the ends or interests of justice. *See, e.g., United States v. Bean,* 564 F.2d 700, 704 (5th Cir.1977); *United States v.*

*Gallington,* 488 F.2d 637, 640, 27 A.L.R. Fed. 582, 588 (8th Cir.1973), *cert. denied,* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974); *United States v. Miller,* 722 F.2d 562, 563 (9th Cir.1983); *United States v. Barker,* 681 F.2d 589, 592 (9th Cir.1982); *State v. Superior Court,* 125 Ariz. 575, 577, 611 P.2d 928, 930 (1980) (in banc); *Blinken v. State,* 291 Md. 297, 308, 435 A.2d 86, 91 (1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2235, 72 L.Ed.2d 846 (1982); *State v. Thomas,* 61 N.J. 314, 322, 294 A.2d 57, 61 (1972); *State v. Haner,* 95 Wash.2d 858, 865, 631 P.2d 381, 385 (1981) (en banc).

■ We conclude that a court's ultimate discretion in accepting or rejecting a plea agreement is whether it is consistent with the public interest in the fair administration of justice. This general standard is not markedly different from the language in Rule 11(b), which states that a court should not accept a nolo contendere plea [10] until "after due consideration of the views of the parties and the interest of the public in the effective administration of justice." Furthermore, as we discuss in more detail in Part II, courts have utilized a similar standard in connection with the dismissal of criminal charges under Rule 48(a) of the Federal Rules of Criminal Procedure and related statutes.

**7.** The material portion of Rule 11(e)(2) is: "[T]he court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report."

**8.** Rule 32(c) of the West Virginia Rules of Criminal Procedure details the requirements for a presentence report. Rule 32(c)(2) provides:

"Report.—The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court."

**9.** Rule 11(e)(4) provides:

"Rejection of a Plea Agreement.—If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open

court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea, or plea of nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

**10.** In *State ex rel. Clark v. Adams,* 144 W. Va. 771, 111 S.E.2d 336, 89 A.L.R.2d 528 (1959), *cert. denied,* 363 U.S. 807, 80 S.Ct. 1242, 4 L.Ed.2d 1149 (1960), we discussed the nolo contendere plea at some length. We said, "The plea of nolo contendere means literally 'I do not wish to contend.' . . . It constitutes an implied confession of guilt." 144 W.Va. at 778, 111 S.E.2d at 340, 89 A.L.R.2d at 534. We also noted from the standpoint of the criminal charge, it "has the effect of a plea of guilty in that proceeding." 144 W.Va. at 780, 111 S.E.2d at 341, 89 A.L.R.2d at 535. Thus, we believe there is a direct correlation between the standard for accepting a nolo contendere plea and a guilty plea.

■ As to what is meant by a plea bargain being in the public interest in the fair administration of justice, there is the initial consideration that the plea bargain must be found to have been voluntarily and intelligently entered into by the defendant and that there is a factual basis for his guilty plea. Rule 11(d) and (f). In addition to these factors, which inure to the defendant's benefit, we believe that consideration must be given not only to the general public's perception that crimes should be prosecuted, but to the interests of the victim as well.[11] Similar thoughts were expressed by the Wisconsin Supreme Court in *State v. Kenyon*, 85 Wis.2d 36, 47, 270 N.W.2d 160, 165 (1978):

"While the concerns expressed by the court for the defendant were legitimate and proper and go to the public interest to a limited degree, there must also be some concern with the public's right to have the crimes actually committed fairly prosecuted and to the protection of the rights of third persons. The court should consider the various elements as they appear and then exercise its discretion."

■ A review of cases suggests some of the more obvious guidelines that a trial court should use in determining whether a plea agreement should be accepted or rejected. A primary test is in light of the entire criminal event and given the defendant's prior criminal record, whether the plea bargain enables the court to dispose of the case in a manner commensurate with the seriousness of the criminal charges and the character and background of the defendant.

One of the leading cases in this area is *United States v. Bean*, 564 F.2d 700 (5th Cir.1977), in which the defendant appealed the district court's refusal to accept his guilty plea to auto theft, pursuant to a plea bargain that would have required the dismissal of one count of burglary also charged in the indictment. The Fifth Circuit upheld the district court, noting that "since the counts dismissed pursuant to plea bargains often carry heavier penalties than the counts for which a guilty plea is entered, a plea bargain to dismiss charges is an indirect effort to limit the sentencing power of the judge." 564 F.2d at 704.

The court also noted that the defendant had a prior burglary and theft conviction, for which he had served four years, and had also served time for unlawfully carrying a weapon. It affirmed the district judge's conclusion "that the plea bargain did not provide for imposition of a sentence commensurate with the offense and the dangerous character of the offender." 564 F.2d at 704. *See also United States v. Escobar Noble*, 653 F.2d 34 (1st Cir.1981); *United States v. Adams*, 634 F.2d 830, 56

---

11. We are reinforced in this view by the following legislative findings enacted by the 1984 Legislature in Senate Bill No. 4 entitled "Victim Protection Act of 1984," adding a new Article 11A to Chapter 61 of the West Virginia Code. W. Va. Code, 61–11A–1, states, in part:

"(a) The Legislature finds and declares that without the cooperation of victims and witnesses, the criminal justice system would cease to function, yet too often these individuals are either ignored by the criminal justice system or simply used as tools to identify and punish offenders.

"The Legislature finds further that all too often the victim of a serious crime is forced to suffer physical, psychological or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system not totally responsive to the needs of such victims.

"The Legislature finds further that under the current law, law-enforcement agencies must have cooperation from a victim of crime and yet neither the agencies nor the legal system can offer adequate protection or assistance when the victim, as a result of such cooperation, is threatened or intimidated.

"The Legislature finds further that while the defendant is provided with counsel who can explain both the criminal justice process and the rights of the defendant, the victim or witness has no counterpart and is usually not even notified when the defendant is released on bail, the case is dismissed, a plea to a lesser charge is accepted, or a court date is changed.

\* \* \* \* \* \*

"(b) The Legislature declares that the purposes of this article are to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process and to ensure that the state and local governments do all that is possible within the limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant."

A.L.R.Fed. 510 (5th Cir.1981); *United States v. Ocanas*, 628 F.2d 353 (5th Cir. 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981); *United States v. Munroe*, 493 F.Supp. 134 (E.D.Tenn. 1980); *State v. Todd*, 654 S.W.2d 379 (Tenn.1983).

■ It has also been recognized that a plea agreement may be both reasonable and necessary when it is designed to secure a legitimate and important prosecutorial interest. A typical illustration is where the prosecutor enters into a favorable plea bargain with the defendant in order to obtain critical testimony needed to convict an accomplice. *E.g., United States v. Hamm*, 659 F.2d 624 (5th Cir.1981).

Some courts have also considered Standard 14–1.8(a) of the American Bar Association's Standards for Criminal Justice (2d ed.1982), which provides that "[i]t is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when consistent with the protection of the public, the gravity of the offense, and the needs of the defendant." The following factors, if established by substantial evidence, are listed as being relevant to whether a plea bargain should be approved: (i) the genuine contriteness of the defendant and his willingness to assume responsibility for his conduct; (ii) the possibility that the plea bargain may make possible alternative correctional measures; and (iii) the avoidance of trial may spare the victims unseemly public scrutiny or embarrassment.

To this list, we would also add that there may be cases where the public interest is best served by having the case tried so that public confidence in the criminal justice system is maintained.[12]

To ensure that the trial court properly exercises its discretion in accepting or rejecting plea agreements, it is incumbent upon the prosecutor to inform the court of his reasons for proposing the plea agreement. The Eighth Circuit in *Gallington*, 488 F.2d at 640, mandated that in addition to the procedures specified in Rule 11, "[j]udges are to require the agreement to be disclosed in open court at the time the plea is offered and require that the reasons for reaching the agreement be set forth in detail." (Footnotes omitted) *See also United States v. Mack*, 655 F.2d 843, 847 (8th Cir.1981); American Bar Association's Standards for Criminal Justice, Standard 14–3.3(a) (2d ed.1982). Requiring a prosecutor to state his reasons for entering into a plea agreement with a defendant is as essential as requiring a statement of reasons supporting a motion for the dismissal of criminal charges, as discussed in Part II of this opinion. We, therefore, conclude that a prosecutor has a duty to inform the trial court of his specific reasons for entering into a plea agreement with a defendant.

The trial court also had the right be informed not only of the terms of the agreement, but also of the circumstances surrounding the criminal episode which is covered by the plea bargain. Additionally, the court is entitled to secure all relevant information surrounding the background, prior criminal record, and the degree of criminal involvement of the defendant to assist it in determining whether to accept or reject the tendered plea bargain.

## II. DISMISSAL OF CHARGES

The two written agreements made between the defendants, Dempsey and Brown, and Special Prosecutor Losch recommend the dismissal or *nolle prosequi* of all the criminal charges, except for the

12. This concept is found in the commentary to Part D, Principle 2(i) of the U.S. Department of Justice Principles of Federal Prosecution, included in the Appendix of J. Bond, Plea Bargaining and Guilty Pleas App. D–8 (2d ed. 1982): "There may be situations in which the public interest might better be served by having a case tried rather than by having it disposed of by means of a guilty plea. These include situations in which it is particularly important

to permit a clear public understanding that 'justice is done' through exposing the exact nature of the defendant's wrong-doing at trial, or in which a plea agreement might be misconstrued to the detriment of public confidence in the criminal justice system. For this reason, the prosecutor should be careful not to place undue emphasis on factors which favor disposition of a case pursuant to a plea agreement."

count of false swearing to which Dempsey pled nolo contendere. We held in Syllabus Point 1 of *Denham v. Robinson,* 72 W.Va. 243, 77 S.E. 970 (1913), that a prosecutor cannot dismiss criminal charges without the prior approval of the court: "The entry of a *nolle prosequi* by the prosecuting attorney, though the attorney general joins therein, without the consent of the court, is ineffective to discontinue a prosecution upon an indictment by a grand jury."

█ We also stated in Syllabus Point 2 of *Denham* that while at common law the prosecutor had complete discretion to enter a *nolle prosequi,* this was not the law in the Virginias:

"Though the rule at common law is otherwise, the practice long followed in Virginia, before the separation, and since then in trial courts of this state has become crystalized into our law, and a *nolle prosequi* entered without the consent of the court will be unavailing to discharge the accused from prosecution."[13]

*See also State v. Ward,* 112 W.Va. 552, 165 S.E. 803, 85 A.L.R. 1175 (1932).[14]

As a corollary to this rule and in order to guide the court in determining whether to consent to a *nolle prosequi,* we said in *State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 278 S.E.2d 624, 632 (1981), that the prosecutor must give the court his reasons for recommending a *nolle prosequi:*

"[T]he prosecutor has a duty to support his action with reviewable reasons and since the court entertaining the motion to dismiss is entitled to have all of the relevant facts of the case before it rules on the motion, the prosecutor must have a knowledge of all the circumstances surrounding the case before he can legitimately move for a *nolle prosequi.*"

█ The requirement that a dismissal of criminal charges requires the consent of the court is incorporated into Rule 48(a) of the West Virginia Rules of Criminal Procedure,[15] which basically follows Rule 48(a) of the Federal Rules of Criminal Procedure. There is ample federal and state authority for the proposition that under such rule, specific reasons must be given by the prosecutor for the dismissal so that the trial court judge can competently decide whether to consent to the dismissal. *See, e.g., United States v. Ammidown,* 497 F.2d 615, 620 (D.C.Cir.1973); *United States v. Salinas,* 693 F.2d 348, 352 (5th Cir.1982); *United States v. Derr,* 726 F.2d 617, 619 (10th Cir.1984); *United States v. Doe,* 101 F.Supp. 609, 611 (D.Conn.1951); *United States v. Shanahan,* 168 F.Supp. 225, 229 (S.D.Ind.1958); *United States v. Becker,* 221 F.Supp. 950, 953 (W.D.Mo.1963); *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n,* 228 F.Supp. 483, 486 (S.D.N.Y.1964); *United States v. Butler,* 486 F.Supp. 1285, 1294 (E.D.Tex.1980), *rev'd sub nom., United States v. Hamm,* 659 F.2d 624 (5th Cir.1981) (en banc); *Turner v. District Court,* 188 Colo. 146, 150, 533 P.2d 498, 500 (1975) (en banc); *State v. Lloyd,* 185 Conn. 199, 202, 440 A.2d 867, 869 (1981); *Manning v. Engelkes,* 281 N.W.2d 7, 9 (Iowa 1979); *Genesee County Prosecutor v. Genesee Circuit Judge,* 391 Mich. 115, 120, 215 N.W.2d 145, 147 (1974); *State v. Aubol,* 309 Minn. 323, 325, 244 N.W.2d 636, 638 (1976); 8B J.

---

**13.** This appears to be the majority view, as evidenced by this statement from *United States v. Cowan,* 524 F.2d 504, 509–10 (5th Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976): "Before the adoption of [Rule] 48(a), more than thirty states had, by statute or judicial decision, modified the common law to give courts a responsible role in the dismissal of a pending criminal proceeding by requiring an 'order' or 'leave' or 'consent' of court." (Footnotes omitted)

**14.** Both *Denham* and *Ward* cite as a supporting reference W.Va.Code, 62–2–25, or its antecedent, which provides: "If any prosecuting attorney shall compromise or suppress any indictment or presentment without the consent of the court entered of record, he shall be deemed guilty of malfeasance in office, and may be removed therefrom in the mode prescribed by law."

**15.** Rule 48(a) of the West Virginia Rules of Criminal Procedure provides: "By Attorney for State.—The attorney for the State may by leave of court file a dismissal of an indictment, information, or complaint, and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

Moore, Moore's Federal Practice ¶ 48.02[2] (2d ed.1983); 3A C. Wright, Federal Practice and Procedure § 812 (2d ed.1982); Annot., 48 A.L.R.Fed. 635 (1980).

 Moreover, most of the foregoing courts also hold that as a general rule, a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice. *See also United States v. Perate*, 719 F.2d 706, 710 (4th Cir.1983); *United States v. Cowan*, 524 F.2d 504, 512 (5th Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976); *United States v. Dupris*, 664 F.2d 169, 174 (8th Cir.1981); *United States v. Weber*, 721 F.2d 266, 268 (9th Cir.1983); *United States v. Del Vecchio*, 707 F.2d 1214, 1216 (11th Cir.1983); *United States v. Hastings*, 447 F.Supp. 534, 537 (E.D.Ark.1977); *United States v.*

*N.V. Nederlandsche Combinatie Voor Chemische Industrie*, 428 F.Supp. 114, 117 (S.D.N.Y.1977). This public interest standard is the same as the standard applied to the acceptance of plea agreements under Rule 11, discussed in Part I of this opinion.

Absent some peculiar feature in the particular case, we believe the considerations that we have outlined in Part I for determining whether to accept or reject a plea bargain are equally applicable to the dismissal of criminal charges under Rule 48(a). In the majority of situations, most dismissals under Rule 48(a) arise in connection with a plea bargain.[16]

 We have been provided the transcript of the hearing before the trial court on November 19, 1983. At this hearing, Special Prosecutor Losch argued in support of the Dempsey and Brown agreements.[17]

---

**16.** We recognize that there may be occasions where the dismissal of charges is unrelated to a plea bargain. Some of these situations are summarized in 8B J. Moore, Moore's Federal Practice ¶ 48.02[2] at 48-8 & –9 (2d ed. 1983):

"Apart from insufficiency of proof, there are a number of other possible reasons for dismissing a prosecution; death of the defendant, incurable insanity or incompetency to stand trial, serious and incurable physical disease or disability, defendant a fugitive, protection of Government security against possible trial disclosures, and the superseding of the indictment." (Footnotes omitted)

The term "insufficiency of proof" obviously embraces a number of factors, such as the death of key prosecution witnesses or the destruction of evidence.

A prosecutor's good faith belief that the accused is innocent of the crime would also support a Rule 48(a) dismissal if properly established. *United States v. Weber*, 721 F.2d 266 (9th Cir.1983).

In *State v. Lundeen*, 297 N.W.2d 232, 236 (Iowa App.1980), the following factors are listed as relevant in considering whether a dismissal of charges is proper:

"(1) [W]eight of the evidence of guilt or innocence; (2) nature of the crime involved; (3) whether defendant is or has been incarcerated awaiting trial; (4) whether defendant has been sentenced in a related or similar case; (5) length of such incarceration; (6) possibility of harassment; (7) likelihood of new or additional evidence at trial; (8) effect on the protection to society in case the defendant should actually be guilty; (9) probability of greater incarceration upon conviction of another offense; (10) defendant's prior record;

(11) the purpose and effect of further punishment; and (12) any prejudice resulting to defendant by the passage of time."

**17.** This excerpt contains Special Prosecutor Losch's reasons in support of the agreement with Brown:

"Well, Your Honor, the—we have gone through this case meticulously and over and over again. We, of course, feel there is a case sufficient to warrant prosecution, but it's my feeling as special prosecutor — and I have mulled over this for a good while — that the benefits of going ahead versus the detriments to all concerned, including the defendant, don't warrant us proceeding any further with it. We—you know, we feel like we have a case, but it's an iffy-iffy case when it's all said and done against this defendant.

"Now, as far as the other defendant is concerned, we don't have any qualms or problems with the case that we have, and there are a lot of factors that enter into it, including the witnesses for the State and other people that we have to depend on; and, quite frankly, the risk to Fayette County should the prosecution not be successful and Dave Brown come back in, you know, on his job and —."

Subsequently, Special Prosecutor Losch further explained his reasons for supporting the Brown agreement and also gave his reasons for approving Dempsey's plea agreement:

"Yes, Your Honor. Your Honor, we have spent hours and hours going over this case, and I don't wish it to appear to the Court nor to any of those present that we don't believe that we have a case against Mr. Brown, which we think we do, but in being an officer of the court and looking at what I believe to be the

In light of the foregoing law, we conclude that general statements by a prosecutor that a dismissal of criminal charges would effectuate the efficient and proper administration of justice are not specific enough to support the dismissal. Nor is it sufficient for a prosecutor to generally conclude that the case is difficult and might be lost, because uncertainty is inherent in any litigation. What is needed from a prosecutor is a statement of the salient facts and specific reasons that would provide a trial court with some basis for concluding that the dismissal of criminal charges is warranted, following the criteria which we have set out in Part I, *infra*.

We again stress the primary test, as noted in Part I, is whether the plea bargain is too lenient when viewed in the light of the entire criminal event and the defendant's prior criminal record. It is possible that the special prosecutor had some valid reasons to support the agreements with Dempsey and Brown and, consequently, the proposed dismissal of charges under Rule 48(a) might possibly be warranted. These specific reasons, however, were not given to the special judge in any of the proceedings below.

■ At this point, none of the criminal charges against either Dempsey or Brown have been dismissed. Rule 48(a) requires a prosecutor, following a court's approval of a dismissal, to "file a dismissal of an indictment, information, or complaint." We interpret the requirement that a prosecutor "file a dismissal" to mean that a written order must be signed by a judge before prosecution terminates on the criminal charges dismissed in the written order. This interpretation is consistent with our view, discussed more fully in Part III, that the plea bargaining process necessitates that a court be given flexibility and the authority to change its earlier decisions as either new facts are discovered or previous oral rulings are reconsidered.

■ The special judge in the present case has only orally approved of the dismissals proposed in the agreements, which does not in and of itself serve to formally dismiss the outstanding indictments and informations. Therefore, the dismissal of criminal charges is not completed until a written order approved by a judge has been entered of record dismissing criminal indictments or informations, pursuant to Rule 48(a) and the standards and procedures discussed herein.

## III. THE JEOPARDY BAR

■ The defendant Dempsey urges that further reconsideration of his plea is foreclosed because jeopardy attached once the circuit court orally agreed to accept his nolo contendere plea, pursuant to the plea agreement, and orally pronounced sentence thereon. In his view, the lack of a written order accepting the plea and imposing a sentence is not material. We disagree.

Although general language can be found to the effect that jeopardy attaches once a plea of guilty or nolo contendere is accepted by a trial court, *see, e.g., United States v. Cambindo Valencia,* 609 F.2d 603, 637 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980);

efficient and proper administration of justice and keeping in mind the probable consequences should this—should we not be able to prove the case or lead it to a conviction, I have concluded that in the interest of justice and in the interest of what I feel is the best for Fayette County, that the agreement reached with Dave Brown should be approved, and it is a very, very tough case, a very technical case, and I just, quite frankly, don't feel real comfortable in going ahead with it knowing that he is a police officer, and one of my rationales for doing this is he will no longer be a police officer for a substantial amount of time in this county other than on the state level; and, therefore, the—any prob-

lems that he may have with back pay or anything like that are likewise washed up into a sum certain here that can be had, and we feel like that's the way to go.

"As far as Mr. Dempsey is concerned, I felt all along that he probably was the less culpable of the three. Certainly the case on him for the misdemeanors, we feel, is very strong. We have no problems with that, but we feel that under the circumstances he should be allowed to plea as set forth and that we can see no reason through our investigation that he should not be a good subject for probation and should not be awarded probation. We feel that that's by far the best solution to this problem."

*United States v. Jerry,* 487 F.2d 600, 606 (3d Cir.1973); *United States v. Bullock,* 579 F.2d 1116, 1118 (8th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978); *Nardone v. Mullen,* 113 R.I. 415, 418, 322 A.2d 27, 29 (1974); *but see United States v. Combs,* 634 F.2d 1295, 1298 (10th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981), this statement is usually made without any extended analysis of double jeopardy principles.

 We agree with the following remarks made in *United States v. Cruz,* 709 F.2d 111, 113–14 (1st Cir.1983), where the court reviewed a number of these cases which comment on the attachment of jeopardy in a plea bargaining situation:

"None of these cases, however, analyze in depth the reasons for the application of the double jeopardy rule and all of them are factually distinguishable from the situation before us. For several reasons we do not think that jeopardy must attach automatically and irrevocably in all instances when a guilty plea is accepted. Acceptance of a guilty plea to a lesser offense carries no implied acquittal of the greater offense and for this reason is not the same as a verdict. *See Klobuchir v. Commonwealth of Pennsylvania,* 639 F.2d 966 (3d Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981); *Hawk v. Berkemer,* 610 F.2d 445 (6th Cir.1979). Moreover, the 'ordeal' of a Rule 11 proceeding is significantly different from the ordeal of trial: Rule 11 hearings are not trials, and the defendant here was never in jeopardy

of conviction on any charge except the lesser offense to which his plea was offered." (Footnote omitted)

 We have generally followed the United States Supreme Court's holdings with regard to when jeopardy attaches, as summarized in *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 650 (1977): "The protections afforded by the [Double Jeopardy] Clause are implicated only when the accused has actually been placed in jeopardy.... This state of jeopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence." (Citations omitted) *See* Syllabus Point 1, *Adkins v. Leverette,* 164 W.Va. 377, 264 S.E.2d 154 (1980);[18] Syllabus Point 4, *Manning v. Inge,* 169 W.Va. 430, 288 S.E.2d 178 (1982).[19] We are not aware of any United States Supreme Court opinion which discusses when jeopardy attaches in a plea bargaining situation. The rules regarding the attachment of jeopardy at a jury or a nonjury trial[20] cannot be directly transposed to the plea bargain process because of the inherent differences between the plea bargain procedure and the formal adjudicatory process arising from a criminal trial.

 A plea agreement is proposed after a process of informal and off-the-record negotiations between a prosecutor and a defense attorney, who cooperate with each other in seeking to resolve the case in a way that is acceptable to both parties. As one commentator observed, "[P]lea bar-

---

**18.** Syllabus Point 1 of *Adkins* states: " 'One is in jeopardy when he has been placed on trial on a valid indictment, before a court of competent jurisdiction, has been arraigned, has pleaded and a jury has been impaneled and sworn.' *Brooks v. Boles,* 151 W.Va. 576, 153 S.E.2d 526 (1967)."

**19.** Syllabus Point 4 of *Manning* states: "Jeopardy attaches in a non-jury trial in a magistrate court which is exercising proper jurisdiction when the accused has been charged in a valid warrant and has entered a plea and the magistrate has begun to hear evidence."

**20.** Even though jeopardy attaches at a certain stage in a plea bargain proceeding, this does not mean that it has become irretrieveably embed-

ded. As illustrated in *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), if a defendant is successful in setting aside his guilty plea conviction, the State is not barred from prosecuting him on the underlying offense. In *Tateo,* the United States Supreme Court recognized that while jeopardy had initially attached when the guilty plea was entered and sentence had been executed, the subsequent setting aside of the guilty plea because it was coerced did not preclude further prosecution because it was analogous to a reversal on appeal for trial error, citing *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), and *Forman v. United States,* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960).

gaining commonly occurs in private where no victim, member of the public, or other watchdog is likely to see it and howl." Alschuler, *Implementing the Criminal Defendant's Right to Trial: Alternatives to the Plea Bargaining System,* 50 U.Chi. L.Rev. 931, 962 (1983). Once the parties have arrived at a plea bargain, there is no adversarial relationship between a prosecutor and a defense attorney in the traditional sense because both parties seek to have a court ratify and implement the agreement.[21]

Plea agreements frequently contain multiple conditions which, besides sentencing recommendations, may cover a host of matters, such as agreements to allow pleas to lesser included offenses, to dismiss indictment counts or other indictments, to forego additional charges, or to forego recidivist proceedings. In some instances, the obligation of a prosecutor to recommend a sentence or a dismissal of charges under a plea agreement is predicated on a defendant agreeing to testify truthfully in later trials. In these circumstances, the plea will be accepted pursuant to the plea bar-

gain with the agreed sentence either imposed or deferred. If the defendant materially violates a condition of his plea agreement, courts have uniformly permitted the plea bargain to be set aside by the prosecutor, who may then pursue the charges previously covered by the plea agreement.[22] *E.g., United States v. Nathan,* 476 F.2d 456 (2d Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973); *United States v. Simmons,* 537 F.2d 1260 (4th Cir.1976); *United States v. Donahey,* 529 F.2d 831 (5th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *United States v. Calabrese,* 645 F.2d 1379 (10th Cir.); *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390, *cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981); *State v. Nall,* 379 So.2d 731 (La. 1980); *Sweetwine v. State,* 42 Md.App. 1, 398 A.2d 1262 (1979), *aff'd,* 288 Md. 199, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980); *State v. Rivest,* 106 Wis.2d 406, 316 N.W.2d 395 (1982); Annot., 16 A.L.R.4th 1089 (1982). Although these courts do not address the jeopardy consequences in this situation,

**21.** As between the prosecutor and the defendant, the plea bargaining process has overtones of contract law and on occasion we, along with other courts, have utilized contractual terminology in discussing the enforceability of a plea agreement against a prosecutor. *E.g., State ex rel. Gray v. McClure,* 161 W.Va. 488, 242 S.E.2d 704 (1978). *See also United States ex rel. Selikoff v. Commissioner of Correction,* 524 F.2d 650, 654 (2d Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976); *Johnson v. Mabry,* 707 F.2d 323, 327 (8th Cir. 1983), *overruled on other grounds,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390, *cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981); *State v. Yoon,* 662 P.2d 1112, 1116 (Hawaii 1983); *State v. Rivest,* 106 Wis.2d 406, 413, 316 N.W.2d 395, 399 (1982). However, the contractual analogies used to analyze the negotiating process between the prosecutor and the defendant are not applicable to the judge insofar as it relates to his decision to accept or reject a plea bargain under Rule 11. We agree with this statement in *Ocanas,* 628 F.2d at 358: "The danger in a pure contractual approach to plea bargaining is that it may seduce one into thinking that the plea bargain involves only two parties, the prosecutor and the defendant, when in fact the trial court plays a critical role in the process."

**22.** We have adopted much the same rule in Syllabus Point 2 of *Blackburn v. State,* 170 W.Va. 96, 290 S.E.2d 22 (1982), which states:

"Where a defendant enters a plea bargain arrangement whereby he agrees not to appeal a conviction on a previous charge to which he has never admitted guilt, but has been convicted by jury verdict, the defendant should not be deemed to have irrevocably waived his right to appeal. However, if the defendant chooses to disregard the agreement and file a timely appeal, the State should not be held to the bargain and, at its option, may seek resentencing on all other convictions involved in the agreement or reinstitute any charges dismissed pursuant to the plea bargain and proceed to trial thereon."

In a related area, we have also held in Syllabus Point 1 of *State ex rel. Morris v. Mohn,* 165 W.Va. 145, 267 S.E.2d 443 (1980): "A recognized corollary to the principle that a guilty plea must be shown to have been intelligently and voluntarily entered is the rule that if the plea is based on a plea bargain which is not fulfilled or is unfulfillable, then the guilty plea cannot stand." *See also Spencer v. Whyte,* 167 W.Va. 772, 280 S.E.2d 591 (1981). We noted in *Morris* and *Spencer* that since the pleas had to be invalidated, the defendants were subject to the original criminal charges that existed prior to plea bargaining.

these cases do suggest facets of the plea bargaining process that merit consideration in fashioning a double jeopardy rule.

 Plea bargaining is far removed from the traditional guilt-finding process attendant to a jury or nonjury trial. The primary purpose of a plea bargain arrangement is to avoid the factual guilt determination process, as well as to avoid the ordeal of multiple trials. The court's role is not to make a formal adjudication of guilt beyond a reasonable doubt on the charge to which the defendant is willing to plead,[23] nor does the court determine whether the defendant is innocent of the charges which the prosecutor is willing to dismiss. The central role of the court in a plea bargain, insofar as the defendant is concerned, is to ascertain that the plea is voluntarily and intelligently made and that the defendant understands its consequences and the constitutional rights he is waiving.

As we have previously noted, there are courts which have stated that jeopardy attaches once a plea is accepted by the judge and have required the judge to be bound by the plea agreement, including the stipulated sentence. However, to hold that a court is bound to a sentence at the time a plea is accepted and before sentence is actually pronounced and executed is contrary to those cases which hold that a court may increase a previously imposed sentence prior to the time the defendant commences serving under it.[24] In *Neidinger v. United States*, 647 F.2d 408, 410 (4th Cir.), cert. denied, 454 U.S. 859, 102 S.Ct. 311, 70 L.Ed.2d 155 (1981), the Fourth Circuit explained in reference to the authority of a court to modify a sentence, that "[c]onstitutional protection against double jeopardy does not attach prior to the commencement of a sentence. *See, e.g., United States v. Bynoe*, 562 F.2d 126 (1st Cir.1977); *Acme Poultry Corp. v. United States*, 146 F.2d 738 (4th Cir.1944), cert. denied, 324 U.S. 860, 65 S.Ct. 865, 89 L.Ed.2d 1417 (1945)." *See also United States v. Ford*, 632 F.2d 1354, 1380 (9th Cir.1980), cert. denied, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981); *United States v. Davidson*, 597 F.2d 230, 233 (10th Cir.), cert. denied, 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979); *State v. Ryan*, 86 N.J. 1, 8, 429 A.2d 332, 336, cert. denied, 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981).[25]

We have adopted a similar rule, without, however, referring to jeopardy principles, in Syllabus Point 2 of *State ex rel. Roberts v. Tucker*, 143 W.Va. 114, 100 S.E.2d 550 (1957): "Where imprisonment has begun in satisfaction of a valid sentence, the trial court is without jurisdiction, even during the same term of court, to set aside such valid sentence and impose an additional or increased sentence." *Roberts* relied on *State ex rel. Williams v. Riffe*, 127 W.Va.

---

23. Although Rule 11(f) requires a court to be satisfied that there is a factual basis for the guilty plea, this does not mean that the court must be satisfied beyond a reasonable doubt that the defendant is in fact guilty. In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the United States Supreme Court concluded that a guilty plea could be upheld even though the defendant persisted in denying his guilt at the time the guilty plea was entered. As long as the trial court can find a sufficient independent factual basis for accepting the guilty plea, the guilty plea is valid. *See* 1975 Committee Notes to Rule 11(f); 8 J. Moore, Moore's Federal Practice ¶ 11.07[1] (2d ed. 1983).

24. This point is not discussed by those courts which state that jeopardy attaches once the judge accepts the plea.

25. In *United States v. DiFrancesco*, 449 U.S. 117, 134, 101 S.Ct. 426, 435–36, 66 L.Ed.2d 328, 344 (1980), the United States Supreme Court acknowledged the authority of a court to modify sentences after tracing its common law origins:

> "The common law is important in the present context, for our Double Jeopardy Clause was drafted with the common-law protections in mind.... This accounts for the established practice in the federal courts that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence." (Citations omitted)

Some courts have interpreted *DiFrancesco* to permit an increase in sentence even though the defendant has commenced serving the sentence. *E.g., United States v. Jefferson*, 714 F.2d 689 (7th Cir.1983); *Aldoupolis v. Commonwealth*, 386 Mass. 260, 435 N.E.2d 330, cert. denied, 459 U.S. 864, 103 S.Ct. 142, 74 L.Ed.2d 120 (1982).

573, 578, 34 S.E.2d 21, 23 (1945), where we did refer to double jeopardy:

> "[I]n criminal cases where the judgment has been satisfied in whole or in part, [the rule] is limited to those cases in which the trial court reduces the penalty imposed. Cases in which the penalty is increased are treated as subjecting the accused to double jeopardy and therefore the second sentence is void, leaving in effect the original sentence."[26]

We conclude that the entry of a nolo contendere or a guilty plea pursuant to a plea bargain and the oral pronouncement of a sentence by a circuit court does not impose a double jeopardy bar where the defendant has not served any portion of the sentence. We reject the idea that jeopardy attaches when a plea is accepted as being inconsistent with the complex and contingent nature of plea bargaining and as impeding the authority of a court to decide ultimately whether the plea agreement serves the public interest in the fair administration of justice. We therefore conclude that in the present case, the oral acceptance of Dempsey's nolo contendere plea, pursuant to a plea agreement, and the oral imposition of sentence does not impose a jeopardy bar that can be claimed by Dempsey where he has not served any portion of the sentence.

## IV. RULE 11(e)(2) & (3)

Some courts appear to avoid the jeopardy issue by interpreting Rule 11(e)(2) & (3) as requiring a court to be permanently bound to its initial oral acceptance of a plea agreement. *E.g., United States v. Blackwell,* 694 F.2d 1325, 1338–39 (D.C.Cir.1982); *Cruz,* 709 F.2d at 115; *United States v. Burruezo,* 704 F.2d 33, 38 (2d Cir.1983); *United States v. Holman,* 728 F.2d 809, 812 (6th Cir.1984);[27] *United States v. Runck,* 601 F.2d 968, 970 (8th Cir.1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980); *Banks v. State,* 56 Md.App. 38, 47, 466 A.2d 69, 73 (1983).[28] Conversely, several jurisdictions have held, without any extensive discussion of the procedural rule involved, that a court may initially accept a plea agreement and then later reject it, provided the defendant is permitted to withdraw his plea. *See Dolchok v. State,* 639 P.2d 277 (Alaska 1982); *Reaves v. State,* 417 So.2d 1000 (Fla.App. 1982); *Barker v. State,* 259 So.2d 200 (Fla. App.1972); *State v. Wenzel,* 306 N.W.2d 769 (Iowa 1981); *People v. Dulin,* 122 Mich.App. 382, 332 N.W.2d 492 (1983).

**26.** *Williams* involved an original prohibition to prevent a circuit court from holding a trial. The defendant had earlier entered a guilty plea to a charge of second degree murder, pursuant to a plea bargaining agreement. After the defendant had served several weeks under that sentence, the trial court received from the father of the victim a petition which was signed by other citizens. The import of the petition was that the plea bargain should not have been adopted. After receiving the petition, which was opposed by the defendant's attorney, the trial court vacated the sentence and plea and ordered a trial date to be set on the charge of first degree murder. This Court refused to issue a prohibition on the theory that until the trial was complete and a second sentence imposed, it could not determine that an increased sentence had been imposed.

**27.** In *Holman,* which we regard as typical of these cases, the defendant was charged with assaulting a federal officer. The plea agreement specified a sentence not to exceed one year and one day. The district court held a hearing on the voluntariness of the plea, accepted the plea, ordered a presentence report, and set a date for sentencing. Upon receiving the presentence report, the district court discovered that the defendant had a history of criminal activities and mental problems, information which was unknown to the government. At a subsequent hearing, the district judge advised the defendant that he was rejecting the plea agreement and offered the defendant an opportunity to withdraw his guilty plea. The Sixth Circuit concluded that once the trial court had accepted the guilty plea and the plea agreement, it did not have the authority to subsequently reject the plea agreement, despite the damaging information discovered for the first time in the presentence report.

**28.** Often cited as authority for the proposition that a trial court is bound to its initial oral acceptance of a plea agreement is *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), under a theory that a court is bound out of a sense of fairness to the defendant. In *Santobello,* the United States Supreme Court was concerned with the breach of a plea bargain by a prosecutor and not with the role of the trial court in the plea bargaining process. We do not find any language in *Santobello* that requires a trial court to sacrifice its discretionary authority to accept or reject a plea bargain.

Rule 11(e)(2) authorizes a court to accept, reject, or defer its acceptance of a plea agreement until the presentence report is considered. Rule 11(e)(3) provides: "If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement."

The rationale generally given by those courts that bind a trial court to its initial oral acceptance of a plea agreement rests upon the premise that Rule 11(e)(2) permits a trial court to defer acceptance until the presentence report is considered. Consequently, a trial court that has not deferred accepting the plea agreement is bound.[29] However, this position is unduly semantic because it looks to the language that a court uses rather than to its actions. From a standpoint of judicial economy, a court may wish to conditionally accept the guilty plea and hold the voluntariness and factual basis hearing as required by Rule 11(d) and (f). Until the court is satisfied on these points, there would be no necessity for ordering a presentence report.

Furthermore, we fail to see how a defendant suffers any harm if Rule 11(e)(2) and (3) are interpreted as not binding the trial court to its initial acceptance of the plea agreement. It is clear from Rule 11(e)(4),[30] that if the trial court ultimately rejects the plea bargain, it must "afford the defendant the opportunity to then withdraw his plea." Thus, the defendant is placed back in the position he was in before the bargain was made.

It may be argued that a defendant loses the benefit of his previously accepted bargain when it is later rejected by a trial court. However, a plea bargain is conditional until a trial court has reviewed it and has ascertained its acceptability in light of the criminal act, the defendant's criminal record and the interest of the public. To hold otherwise is to deny the trial court its legitimate role in deciding whether to accept or reject a plea bargain, which it is clearly authorized to do under Rule 11(e).

A strict interpretation of Rule 11(e)(2) & (3) also ignores not only the well recognized principle, discussed more fully in Part III, *supra*, that a court may increase a sentence before a defendant commences serving under it, but also ignores the authority of a trial court to reconsider and rescind previously announced oral or interlocutory orders. *See, e.g., United States v. Green*, 414 F.2d 1174, 1175 (D.C.Cir.1969); *United States v. LoRusso*, 695 F.2d 45, 52 (2d Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); *Jerry*, 487 F.2d at 604; *United States v. Farrah*, 715 F.2d 1097, 1099 (6th Cir.1983); *United States v. Waite*, 450 F.Supp. 1165, 1167 (W.D.Pa.1978). *See also* Syllabus Point 2, *State ex rel. Kincaid v. Spillers*, 165 W.Va. 380, 268 S.E.2d 137 (1980).

■ We, therefore, conclude that under Rule 11, a trial court is not foreclosed from accepting a plea, which is made pursuant to a plea agreement, and conditioning its acceptance upon the receipt of a presentence report. After considering the presentence report, the trial court may reject the plea agreement, in which event it shall permit the defendant to withdraw his plea, pursuant to the procedure outlined in Rule 11(e)(4).

In the present case, the special judge is not bound to his initial oral acceptance of the agreements presented by Dempsey and Brown. Should the special judge decide, upon further reflection or upon the receipt of additional information, that the agreements do not promote the public interest in the fair administration of justice, he has the authority to reject the agreements, pro-

**29.** This strict interpretation of Rule 11 is illustrated in *Banks v. State*, 56 Md.App. 38, 466 A.2d 69 (1983), in which the trial court had accepted the guilty plea, made pursuant to a plea agreement, and ordered a presentence report. It was then discovered that the defendant had a substantial prior record which had not been disclosed to the trial court. The plea agreement was then rejected. On appeal, the court held that the trial judge was bound to the plea agreement, but would not have been if he had deferred acceptance until the presentence report had been received.

**30.** *See* note 9, *supra*.

vided Dempsey is given the opportunity to withdraw his nolo contendere plea.

## V. PROHIBITION

■ The petitioner's status is that of a resident, taxpayer, and concerned citizen of Fayette County. The respondents challenge her standing to maintain a writ of prohibition. In reviewing our prohibition cases, we note that the general rule for standing is expressed in Syllabus Point 6 of *State ex rel. Linger v. County Court of Upshur County,* 150 W.Va. 207, 144 S.E.2d 689 (1965):

> "As a general rule any person who will be affected or injured by the proceeding which he seeks to prohibit is entitled to apply for a writ of prohibition; but a person who has no interest in such proceeding and whose rights will not be affected or injured by it can not do so."

*See also State ex rel. Glass Blowers Ass'n v. Silver,* 151 W.Va. 749, 155 S.E.2d 564 (1967); *State ex rel. Gordon Memorial Hospital, Inc. v. West Virginia State Board of Examiners for Registered Nurses,* 136 W.Va. 88, 66 S.E.2d 1 (1951); *Midland Investment Corp. v. Ballard,* 101 W.Va. 591, 133 S.E. 316 (1926), *overruled on other grounds, State ex rel. Blankenship v. McHugh,* 158 W.Va. 986, 217 S.E.2d 49 (1975).

We have also recognized that citizens and taxpayers may have standing in prohibition to challenge the constitutionality of a statute which affects not only the administration of justice, but also requires the payment of public funds. Syllabus Point 1, *State ex rel. Goodwin v. Cook,* 162 W.Va.

161, 248 S.E.2d 602 (1978); *see also Howard v. Ferguson,* 116 W.Va. 362, 180 S.E. 529 (1935).

The prayer of the petition is that the special circuit judge should be prohibited from entering any orders carrying into effect the Dempsey and Brown agreements. As we have earlier noted, a circuit judge has the right to review a plea bargain agreement and a motion to dismiss or *nolle prosequi* a criminal charge and to reject the same if it is contrary to the public interest or if the prosecutor has failed to give justifiable reasons for his actions in recommending the plea bargain or the motion to dismiss criminal charges.

■ Ultimately, however, this action on the part of the circuit judge is discretionary and ordinarily prohibition does not lie for an abuse of discretion as we stated in Syllabus Point 2 of *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977): "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W.Va.Code,* 53-1-1." *See also Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216, 224 (1983).[31]

■ The special circuit judge should review the adequacy of the reasons advanced by the special prosecutor for his agreements with Brown and Dempsey and consider whether the agreements should be finally accepted under the guidelines set out herein. Because this review and decision is within his sound discretion, we decline to issue a writ of prohibition against the special circuit judge.[32]

**31.** In *Conley,* we recognized that in *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), we had *attempted to set a more fact specific test* as to when from a substantive standpoint prohibition would lie. However, *Hinkle* did not discuss nor change the standing issue for prohibition.

**32.** We do not foreclose the right of a victim or the immediate family of a victim or a person having particular knowledge relevant to the case from petitioning the circuit court to consider facts that may have a bearing on the court's decision to accept or reject a plea bargain or to set a particular sentence. This right is basically provided in felony cases under W.Va. Code, 61-11A-2 (1984), which, in part, provides:

> "(a) For the purposes of this section, 'victim' means a person who is a victim of a felony, the fiduciary of a deceased victim's estate or a member of a deceased victim's immediate family.
>
> "(b) Prior to the imposition of sentence upon any defendant who has been found guilty of a felony or has pleaded guilty or nolo contendere to any felony, the court shall permit the victim of the crime to appear before the court for the purpose of making an oral statement for the record if the victim notifies the court of his desire to make such a statement after receiving notification provided in subsection (c) of this section. If the

## VI. MANDAMUS

The petitioner seeks to have a writ of mandamus issued from this Court to compel the special prosecutor to do the following: (1) to withdraw his promise of immunity from prosecution to Pennington; (2) to seek an indictment against Pennington on sexual assault and false-swearing related charges; and (3) to nullify the agreements made with Dempsey and Brown and to proceed to prosecute them on the underlying charges.

Although Special Prosecutor Losch asserts that he did not offer immunity to Pennington, the minutes of the March 3, 1983 grand jury do not bear this out.[33] The essence of their unwritten agreement is that in return for Pennington's cooperation in the prosecution of Dempsey and Brown, Special Prosecutor Losch agreed not to seek any criminal charges against Pennington, provided Pennington remained truthful.

We begin by noting that our general immunity statute, W.Va.Code, 57–5–2,[34] authorizes only a court to grant immunity to a person when "the ends of justice may be promoted by compelling such testimony or evidence." In *State v. Cox*, 162 W.Va. 915, 253 S.E.2d 517 (1979), we held that law enforcement officers have no authority to give or promise immunity against prosecution [35] and also indicated that prosecutors possessed no such authority.[36] Most

victim fails to so notify the court such failure shall constitute a waiver of the right to make an oral statement. In lieu of such appearance and oral statement, the victim may submit a written statement to the court or to the probation officer in charge of the case. Such probation officer shall forthwith file any such statement delivered to his office with the sentencing court, and the statement shall be made a part of the record at the sentencing hearing. Any such statement, whether oral or written, shall relate solely to the facts of the case and the extent of any injuries, financial losses and loss of earnings directly resulting from the crime for which the defendant is being sentenced.

"(c) Within a reasonable time, prior to the imposition of sentence upon such defendant, the prosecuting attorney or assistant prosecuting attorney in charge of the case shall in writing advise the person who was the victim of such crime or in the case of a minor, the parent or guardian of such minor, or the fiduciary of his estate, if he be then deceased, of the date, time and place of the original sentencing hearing, and of the victim's rights to submit a written or oral statement to the sentencing court as hereinabove provided." W.Va. Code, 61–11A–3 (1984), also requires a victim impact statement to be contained in the presentence report unless the court orders otherwise, "if the defendant, in committing a felony or misdemeanor, caused physical, psychological or economic injury or death of the victim." The effective date of W.Va. Code, 61–11A–1 through –7, is June 4, 1984.

**33.** The grand jury minutes state:

"MR. LOSCH: Now, ladies and gentlemen, I will explain to you now that Rick is back here testifying before you under *a grant of immunity by me* on these conditions: That [he] will not be indicted or prosecuted for the sexual assault of [K.S.B.]; will not be indicted or prosecuted for telling you a story which wasn't true or telling a false story at the time he testified; and that he has agreed to cooperate and tell us what happened, both here and in trial, truthfully; is that correct, Rick?

"MR. PENNINGTON: Yes, sir." (Emphasis added)

**34.** W.Va. Code, 57–5–2, provides:

"In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto."

**35.** The single Syllabus of *Cox* states: "Law enforcement officers do not have authority to promise that in exchange for information a person accused will not be prosecuted for the commission of a crime, and such a promise is generally unenforceable."

**36.** The applicable language in *Cox*, 162 W.Va. at 922, 253 S.E.2d at 521, is: "Indeed, only a very few states would permit a special plea in bar to

courts have held that in the absence of some express constitutional or statutory provision, a prosecutor has no inherent authority to grant immunity against prosecution. *See Gipson v. State,* 375 So.2d 504 (Ala.Crim.App.1978), *aff'd,* 375 So.2d 514 (Ala.1979); *Hammers v. State,* 261 Ark. 585, 550 S.W.2d 432 (1977) (in banc); *Governmental Ethics Comm'n v. Cahill,* 225 Kan. 772, 594 P.2d 1103 (1979); *Commonwealth v. Brown,* 619 S.W.2d 699 (Ky. 1981), *overruled on other grounds, Murphy v. Commonwealth,* 652 S.W.2d 69 (Ky. 1983); *State v. McEachern,* 431 A.2d 39 (Me.1981); *In re Special Investigation No. 231,* 295 Md. 366, 455 A.2d 442 (1983); *Bowie v. State,* 14 Md.App. 567, 287 A.2d 782 (1972); *Grand Jurors for Middlesex County v. Wallace,* 369 Mass. 876, 343 N.E.2d 844 (1976); *Commonwealth v. Strickler,* 481 Pa. 579, 393 A.2d 313 (1978); Annot., 4 A.L.R.4th 1221 (1981); *contra Surina v. Buckalew,* 629 P.2d 969 (Alaska 1981).

In *Bowie,* 14 Md. App. at 575, 287 A.2d at 787, the court analyzed an asserted grant of immunity by a prosecutor and concluded:

> "There is no inherent, common law power in the State's Attorney or in the Grand Jury or in the judge or in anyone else to confer immunity from prosecution. Immunity is exclusively a creation of statute and can only exist where a statute has brought it into being .... It is universally recognized that, absent a statutory grant of power, the prosecuting attorney is not entitled, solely by virtue of his office, to confer immunity upon a witness." (Citations omitted)

Independent of any statutory grant of immunity, courts have considered whether a prosecutor's attempted grant of immunity from prosecution is enforceable in three general situations. First, the agreement not to prosecute is made in connection with a court-approved plea agreement. In this situation, most courts will enforce the agreement since it was court approved and the prosecutor was deemed to have pledged the public faith. *Cf., Ward,* 112 W.Va. at 554–55, 165 S.E. at 804–05, 85 A.L.R. at 1177; *see generally* Annot., 43 A.L.R.3d 281 (1972).

Second, a witness refuses to testify in some proceeding, claiming the Fifth Amendment privilege against self-incrimination. The prosecutor, although lacking any statutory authority, informs the witness that he will grant immunity from prosecution. *E.g., Commonwealth v. Brown, supra; Grand Jurors of Middlesex County v. Wallace, supra; Commonwealth v. Strickler, supra.* Third, the prosecutor without court approval initially agrees not to prosecute if the suspect will cooperate in the prosecution of other suspects. *E.g., Gipson v. State, supra; Butler v. State,* 55 Md.App. 409, 462 A.2d 1230 (1983); *State v. Ward,* 571 P.2d 1343 (Utah 1977), *cert. denied,* 435 U.S. 1005, 98 S.Ct. 1874, 56 L.Ed.2d 386 (1978); *see generally* Comment, *Judicial Supervision of Non-Statutory Immunity,* 65 J. Crim. L. & Criminology 334 (1974).

In these latter two situations, courts have generally followed the basic rule that absent some constitutional or statutory grant, a prosecutor possesses no inherent authority to grant immunity from prosecution.[37] Annot., 4 A.L.R. 4th 1221 (1981).

---

prosecution where the public prosecutor himself promises immunity from prosecution, but court approval of such promises is not obtained."

**37.** Some courts have recognized that where a prosecutor has promised immunity against prosecution without having the authority to do so, subsequent prosecution is not foreclosed, but the evidence induced or secured from the suspect cannot be used against him. *E.g., People v. Manning,* 672 P.2d 499, 512–13 (Colo.1983) (en banc); *Ward,* 571 P.2d at 1347.

This approach is consistent with our holdings that any inculpatory evidence obtained by way

of promises of leniency are not admissible against a defendant. *E.g., State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851, 853 (1983); *State v. Goff,* 169 W.Va. 473, 289 S.E.2d 473, 476 (1982); *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261, 272–73 (1982); *State v. Parsons,* 108 W.Va. 705, 706, 152 S.E. 745, 746 (1930).

A few courts have applied a concept of equitable immunity to this situation and enforced such immunity agreements, despite the fact that the defendant's rights could be protected by excluding any induced testimony or derivative evidence. *See Rowe v. Griffin,* 676 F.2d 524, 526 (11th Cir.1982); *People v. Brunner,* 32 Cal. App.3d 908, 108 Cal.Rptr. 501 (1973).

We, therefore, conclude that there is no need to consider whether the petitioner is entitled to relief by way of mandamus on this point because the special prosecutor had no inherent authority to grant immunity to Pennington against prosecution nor did he have authority absent the trial court's consent to grant immunity under W.Va. Code, 57–5–2.

The question of the petitioner's standing to compel, by way of mandamus, the special prosecutor to initiate criminal charges against Pennington is more complex. We have discussed the duties of the prosecuting attorney at some length in *State ex rel. Skinner v. Dostert*, 166 W.Va. 743, 278 S.E.2d 624, 631 (W.Va.1981), and recognized that he has some discretion in determining whether to prosecute:

> "The duty to prosecute is qualified, however, in that the prosecuting attorney is vested with discretion in the control of criminal causes, which is committed to him for the public good and for the vindication of the public interest. *See State v. Doyle*, 64 W.Va. 366, 62 S.E. 453 (1908); *Ganger v. Peyton*, 379 F.2d 709 (4th Cir. 1967); *Macon v. Com.*, 187 Va. 363, 46 S.E.2d 396 (1948). Thus, the prosecutor in his discretion may decide which of several possible charges he will bring against an accused. *State v. Doyle, supra; Hensley v. City of Norfolk*, 216 Va. 369, 218 S.E.2d 735 (1975). The prosecuting attorney, in his sound discretion, may refrain from prosecuting a cause or, having commenced a prosecution, may move the dismissal of a cause, when in good faith and without corrupt motivation or influence, he thinks that the guilt of the accused is doubtful or

not capable of adequate proof. *See generally*, Annot., 155 A.L.R. 10; 63 Am. Jur.2d, *Prosecuting Attorneys* § 26 (1972). The responsibility of a prosecutor is to seek justice, not merely to convict. *State v. Britton*, [157 W.Va. 711, 203 S.E.2d 462 (1974)]."

More recently in *State ex rel. Hamstead v. Dostert*, 173 W.Va. 133, 313 S.E.2d 409 (1984), we refined the critical distinction between prosecutorial discretion and duty in Syllabus Point 1: "With respect to the determination of whether to seek an indictment and what indictment will be sought in a particular case, the probable cause standard represents the line of demarcation between prosecutorial discretion and prosecutorial duty."

We also indicated in *Hamstead* that if a citizen believes or knows that probable cause exists to charge an individual with the commission of a crime and the prosecutor has not acted, such citizen may seek a writ of mandamus to compel the prosecutor to act.[38]

In *Hamstead*, we cited *State ex rel. Miller v. Smith*, 168 W.Va. 745, 285 S.E.2d 500 (1981), but did not discuss it in any detail. In *Miller*, we granted the right to the victim of a malicious assault to apply to a circuit court to present his complaint to a grand jury, after he had been refused access to the grand jury by the prosecuting attorney.[39]

*Hamstead* and *Miller* exemplify our view that a prosecuting attorney does not have absolute and uncontrollable discretion in determining when criminal charges will be brought. It seems to us that if courts have the power to reject a plea bargain and the dismissal of charges as proposed by a

---

38. The text of *Hamstead* in this particular area is:

> "Therefore, if a citizen believes, has reason to believe, or knows that probable cause exists to charge an individual with the commission of a particular crime, and also believes, has reason to believe, or knows that the prosecutor is failing to perform his nondiscretionary duty to act upon this probable cause, such citizen may seek by writ of mandamus to compel the prosecutor to perform his nondiscretionary duties. If a circuit judge believes, has reason to believe, or knows that probable cause exists to charge an individual with the

commission of a particular crime, and also believes, has reason to believe or knows that the prosecutor is failing to perform his nondiscretionary duty to act upon this probable cause, he may complain as may any other citizen through the prosecution of a mandamus action to compel compliance by the prosecutor." 173 W.Va. at 139, 313 S.E.2d at 415–16.

39. Syllabus Point 1 of *Miller* states: "By application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it. W.Va. Const. art. 3, § 17."

prosecutor, it is an anomaly to find that courts are powerless to provide any control in his decision to initiate criminal proceedings.[40]

While we addressed the standing issue in *Hamstead*, we did so in broad terms utilizing cases [41] that followed Syllabus Point 3 of *State ex rel. Greenbrier County Airport Authority v. Hanna*, 151 W. Va. 479, 153 S.E.2d 284 (1967): "Mandamus lies to require the discharge by a public officer of a nondiscretionary duty." This principle, however, involved situations where it was found initially that the public official had a nondiscretionary duty.

Here, we have a situation where the prosecutor initially has discretion and it is only when probable cause is shown that he has a duty to act. The question of probable cause is essentially one of fact. *Cf.* Syllabus Point 2, *State v. Meadows*, 170 W.Va. 191, 292 S.E.2d 50 (1982) (probable cause for warrantless arrest based on facts and circumstances within knowledge of arresting officers); *see also* Syllabus Point 7, *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980); *State v. Duvernoy*, 156 W. Va. 578, 195 S.E.2d 631 (1973); *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971). This suggests two important conditions on the right of a person to maintain such an action: (1) A person who seeks a mandamus to compel prosecution must possess the necessary facts to establish probable cause or stand in some special position such as being the victim of the crime or a close relative of the victim if the victim is deceased or otherwise incapacitated from assisting in the prosecution of the crime,[42] and (2) the action must be filed in a circuit court, which can make the necessary findings of fact more efficiently than we can in this Court. *Cf. Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744, 749 (1979) ("This Court is not engineered to be as efficient a finder of fact as a trial court because of the cumbersome procedures for

**40.** Commentators have criticized uncontrolled prosecutorial discretion. *See generally* A. Goldstein, The Passive Judiciary: Prosecutorial Discretion and the Guilty Plea (1981); F. Miller, Prosecution: The Decision to Charge a Suspect With a Crime (1969); H. Miller, W. McDonald & J. Cramer, Plea Bargaining in the United States (1978); The Prosecutor (W. McDonald ed. 1979); Applegate, *Prosecutorial Discretion and Discrimination in the Decision to Charge*, 55 Temp.L.Q. 35 (1982); Gifford, *Meaningful Reform of Plea Bargaining: The Control of Prosecutorial Discretion*, 1983 U.Ill.L.Rev. 37; Pugh & Radamaker, *A Plea for Greater Judicial Control Over Sentencing and Abolition of the Present Plea Bargaining System*, 42 (pt. 1) La.L.Rev. 79 (1981); Vorenberg, *Decent Restraint of Prosecutorial Power*, 94 Harv.L.Rev. 1521 (1981); Comment, *Prosecutorial Discretion in the Initiation of Criminal Complaints*, 42 S.Cal.L.Rev. 519 (1969). One of the leading advocates for some control is Professor Kenneth Culp Davis, who in his work Discretionary Justice: A Preliminary Inquiry 224–25 (1969), states:

"The enormous and much abused power of prosecutors not to prosecute is almost completely uncontrolled, even though I can find no reason to believe that anyone planned it that way—or that anyone would. Prosecutions are often withheld, sometimes on the basis of political, personal, or other ulterior influence, without guiding rules as to what will or will not be prosecuted, without meaningful standards stemming from either legislative bodies or from prosecutors themselves, through decisions secretly made and free from criticism, without supporting findings of fact, unexplained by reasoned opinions, and free from any requirement that the decisions be related to precedents. . . .

\* \* \* \* \* \*

"I think we Americans should learn from other nations that the huge discretionary power of prosecutors need not be unconfined, unstructured, and unchecked. We should reexamine the assumptions to which our drifting has led us—that a prosecutor should have uncontrolled discretion." (Footnotes omitted)

**41.** *Hamstead* cited *State ex rel. Rose v. Fewell*, 170 W.Va. 447, 294 S.E.2d 434, 437 (1982); *Perry v. Barker*, 169 W.Va. 531, 289 S.E.2d 423, 428 (1982); Syllabus Point 6, *State ex rel. Bagley v. Blankenship*, 161 W.Va. 630, 246 S.E.2d 99 (1978); Syllabus Point 6, *State ex rel. Kanawha County Building Commission v. Paterno*, 160 W.Va. 195, 233 S.E.2d 332 (1977); Syllabus Point 3, *State ex rel. Goodwin v. Rogers*, 158 W.Va. 1041, 217 S.E.2d 65 (1975); Syllabus Point 1, *State ex rel. The West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969).

**42.** We recognize that law enforcement officials or such other public officials whose duties include supervision of laws that carry penal sanctions are entitled to rely on the services of prosecutors for the enforcement of such laws. They would be deemed to have special standing to see that penal laws in their area of responsibility are enforced since through their investigation they will have obtained the requisite probable cause.

taking depositions."); *State ex rel. Booth v. Board of Ballot Comm'rs*, 156 W.Va. 657, 196 S.E.2d 299 (1973) (election mandamus action where we held that the factual issues had to be decided by circuit court before we could rule on mandamus).

The petitioner does not allege any facts that bring her into a special standing posture such that a right to require prosecution of Dempsey and Brown can be shown. Moreover, even if such a special standing could be shown, the decision as to further prosecution of Dempsey and Brown would first have to be determined by the special circuit judge's action on the agreements tendered to him by the special prosecutor. We decline to intervene by way of a mandamus from this Court on a matter entrusted to the sound discretion of the trial court under the guidelines set forth in Parts I and II. With regard to Pennington, where no charges are pending, even if the petitioner could demonstrate she has standing, the mandamus should not be brought originally in this Court as the existence of probable cause is a factual issue which is best presented and developed at the circuit court level.

For the foregoing reasons, we decline to issue the writs of prohibition and mandamus. We do not foreclose further review and action in and by the circuit court that is consonant with the principles expressed herein.

Writs denied.