STATE OF WEST VIRGINIA

*v.*

FRANKLIN ANTHONY COX *alias "Acy"*

(No. 14028)

Decided April 10, 1979.

*Paul S. Atkins, Timothy G. Leach* for P.E.

*Chauncey H. Browning*, Attorney General, *Frances W. McCoy*, Assistant Attorney General, for D.E.

MCGRAW, JUSTICE:

"Acy" Cox was convicted of armed robbery in the Circuit Court of Kanawha County and was sentenced to thirty years in the State Penitentiary.

He complained to this Court that in the pretrial of his case two errors were committed which were prejudicial to his cause and he assigned them as follows:

> 1. The Court erred in denying and overruling defendant's special plea in bar concerning denial of a speedy trial.

> 2. The Court erred in denying and overruling defendant's special plea in bar concerning an agreement made to him that he would not be prosecuted.

Additionally, the petitioner claims prejudicial error in the course of the trial as follows:

> The Court erred in refusing to allow defendant to produce circumstantial evidence which would tend to show that another certain person committed this crime and that the defendant, your petitioner, had been mistaken for this other person before, by credible witnesses.

We affirm the conviction because the delay in his trial was caused by his incarceration in a federal penitentiary; his testimony in federal court contradicted his claim here with respect to his plea bargain, and two eyewitnesses positively identified him as the armed robber.

## I

We will take the petitioner's last assignment of error first. He argues that a principle fact in issue was the identity of the armed robber and he asserts that the crime was committed by another person who bore a marked resemblance to him, the defendant. In support of this theory, defense counsel presented evidence to the jury that the third party had confessed to the crime and that third party's photograph was introduced and made available to the jurors.

The State's evidence was the testimony of three eye-witnesses to the robbery; two of the three witnesses positively identified the defendant as the robber; the third witness was positive, but not certain, in his identification of the petitioner.

The petitioner complains that the trial court erred by not allowing the petitioner to show that another person, not related to this case, had once identified him as an automobile thief who had committed a crime to which the look-alike later pleaded guilty.

The trial court refused to admit this testimony saying it was not material or relevant because it did not go to the credibility of the eyewitnesses. We think the trial court was correct in its ruling and note that the defendant was permitted to put on his evidence to support his theory of mistaken identity, and his theory was, therefore, before the jury. We find no reversible error in this assignment by the petitioner.

## II

The petitioner says that the circuit court erred in denying his special plea in bar based in denial of a speedy trial. He argues his constitutional right to a speedy trial was violated because he was not brought to trial until two and one-half years after his indictment, and he asserts that the delay was prejudicial to his defense because the person whom he contends committed the crime could not be located at the time of trial.

Briefly, the facts—the defendant was returned to West Virginia from Ohio on December 21, 1972, and by warrant was charged with armed robbery on January 6, 1973. On March 27, 1973, defendant plead guilty to a federal firearms charge, received a two year sentence, and was transferred to a federal penitentiary in Georgia, arriving there in April of 1973. He was indicted by the Kanawha County Grand Jury in April of 1973, and a capias was issued some fifty days later, on June 12, 1973. In August of 1973, the Kanawha County prosecutor learned of defendant's imprisonment at a federal penitentiary in Atlanta, Georgia, and a detainer was immediately filed for temporary custody of defendant, but this effort was unsuccessful. In October of 1973, a second detainer was filed with a Minnesota federal prison to which the defendant had been transferred. The defendant filed a habeas corpus action seeking to prevent extradition to West Virginia. Several witnesses from West Virginia went to the Minnesota extradition hearing, but defendant did not show up for the hearing and the extradition request was honored. The record is not as complete at this point as would be desirable but it appears that the defendant was returned to West Virginia on the armed robbery indictment somewhere between April of 1975 and October 1, 1975. A December 1, 1975 trial date was continued at the defendant's request to the January, 1976 term of court at which he was tried and convicted on January 21, 1976.

The controlling law on this issue is found in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed.2d 101 (1972). There the United States Supreme Court adopted a balancing approach for speedy trial claims in which the conduct of the government and the defendant are weighed against one another on a case-by-case basis. Four factors are to be considered in this balancing process: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The Court made it palpably clear in *Barker* that it regarded none of the factors alone as

either necessary or a sufficient condition to support a finding that there has been a deprivation of the right to a speedy trial.

Applying the above principles to the facts of this case, we begin our examination with the length of delay. The delay of approximately two and one-half years between indictment and trial clearly warrants further inquiry.

The primary reason for the delay, as discussed earlier, was that the defendant was outside the jurisdiction incarcerated in a federal penitentiary. In *Smith v. Hooey*, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed.2d 607 (1969), the Supreme Court held that on a defendant's demand, the State has a constitutional duty "to make a diligent, good-faith effort" to bring him to trial. *Id.* at 383, 89 S. Ct. at 579. We adopted a similar rule for the purposes of this State's "three term rule," embodied in *W.Va. Code*, 62-3-21, in *State ex rel. Stines v. Locke*, ___ W. Va. ___, 220 S.E.2d 443 (1975).

From a review of the record, it appears that the prosecuting authorities of Kanawha County made a diligent, good-faith effort to secure the presence of the accused for trial. The significant delay in this case stems from defendant's imprisonment in federal penitentiaries, the refusal of federal officials to release him to temporary custody, and the defendant's efforts to prevent extradition. At one point he even sought assistance in this regard from the United States Attorney's office in West Virginia.

On the third factor, the defendant in this case did not assert his speedy trial right until September of 1975.

Finally, the defendant was not prejudiced in his defense; it appears the critical witness had not disappeared, was known to be on parole in Ohio, but was not subpoenaed.

Based upon the above factors, we affirm the trial court's denial of defendant's special plea in bar, and find the State of West Virginia complied with all constitution-

al and statutory requirements pertaining to a speedy trial.

## III

Finally, in a significant claim, the claim which moved the court to hear the defendant's case, he claims that the court erred in holding him to trial because he had entered into an agreement, the substance of which was that he would not be prosecuted for this offense.

The defendant contends a state policeman, a trooper, promised him he would not be prosecuted on an armed robbery charge if he would provide (1) information concerning an important criminal case which was currently under investigation; (2) plead guilty to federal gun possession charge; and (3) provide information and testimony on several other charges. That is the essence of the claimed agreement.

The defendant contends that he performed his part of the bargain and he argues that the State is bound by this agreement irrespective of whether it was made by a person having authority to make such agreement and irrespective of whether the promise is fulfillable. He claims that when a defendant relies on such promise to his detriment and cannot be restored to his former position, he is entitled to specific performance of the agreement not to prosecute.

The State asserts, in response, that the information provided to the government by defendant was given before any promise was made and therefore defendant did not rely upon it to his detriment; that the defendant did not deal in good faith with the state trooper because he had already provided the information to a city police officer; that the trooper was without authority to enter into any plea bargaining with the defendant; that the defendant twice denied the existence of any plea bargaining agreement when he entered his plea of possession of a firearm charge in federal court; and that there was never any enforceable plea bargaining agreement made because no valid contract was ever consummated.

The facts adduced at the evidentiary hearing upon defendant's plea in bar are important to our resolution of this assignment of error.

In August, 1972, a Big Star Super Market in Cross Lanes, West Virginia, was robbed of over $20,000 by an armed person. In December of 1972, the defendant was arrested on other charges in Cleveland, Ohio. He was returned to West Virginia on December 21, 1972.

On December 26, 1972, defendant gave a written statement to a detective of the Charleston Police Force relating to an important criminal case wherein he answered that he did not "have . . . any personal knowledge of the shooting of Phil Graziana" and that he had not "heard anybody talk about it."

In a second statement given in the early afternoon on January 10, 1973, defendant expressly contradicted his first statement representing, among other things, that a Gene Truslow told him that he, Truslow, had paid $2,500.00 to two named individuals to kill a "snitching lawyer" but that they had been unsuccessful in their efforts.

Meanwhile, on January 5, 1973, the defendant was positively identified in a lineup by two eyewitnesses to the armed robbery, and the following day a warrant was obtained charging him with that crime.

The critical testimony on this issue was elicited from the trooper who testified that even after the lineup went badly for the defendant, he continued to deny involvement in the armed robbery but represented that he would provide information and testimony in exchange for leniency. The trooper said that he informed the defendant that there was no way he could make any deals with him at that time and that he would have to speak with the prosecuting attorney and the U. S. attorney and get back to the defendant; that he informed another trooper of the situation who indicated he would talk to

the U. S. attorney; that a few days later he learned that the other trooper had not contacted the U.S. attorney so he went to the Kanawha County prosecutor, discussed the matter with him and was at that time authorized to negotiate a deal with defendant; that he couldn't remember whether it was the same day or a week later that he told defendant that everything had been arranged.

The prosecutor testified that he did not authorize any plea bargaining to be conducted by the trooper and the trooper, on cross-examination, admitted that the prosecutor had not expressly approved of giving immunity to the defendant on the armed robbery charge. The detective who took the second statement from the defendant testified that he made no promises to the defendant in return for a statement and that the statements that he took were given to the county prosecutor after the Federal Court trial of the important criminal case.

Our research on this issue reveals absolutely no authority for granting a special plea in bar to further prosecution where neither the trial court nor the public prosecutor approved or authorized the promise of immunity from prosecution.

Every court addressing this issue has held that law enforcement officers do not have authority to promise that in exchange for information, a defendant will not be prosecuted for the commission of a crime and such a promise is unenforceable as being beyond the scope of their authority. *Application of Parham,* 6 Ariz. App. 191, 431 P.2d 86 (1967); *State v. Crow,* 367 S.W.2d 601 (Mo. 1963); *State v. Ashby,* 81 N.J. Super. 350, 195 A.2d 635 (1963); 21 Am. Jur.2d *Criminal Law* § 153 (1965).

Indeed, only a very few states would permit a special plea in bar to prosecution where the public prosecutor himself promises immunity from prosecution, but court approval of such promises is not obtained. *See, e.g., Hammers v. State,* 261 Ark. 585, 550 S.W.2d 432 (1977) (In Banc).

In *Hammers* the public prosecutor, without lawful authority,[1] allegedly promised a defendant immunity from prosecution in exchange for giving a statement and testifying against an accomplice. The court held that an accused is entitled on equitable principles to enforcement of the pledge of the public faith made by a prosecutor, notwithstanding the general rule that a state is not estopped by the unauthorized acts of its agents, *see, e.g.,* syl. pts. 4 & 5, *Samsell v. State Line Development Co.,* 154 W. Va. 48, 174 S.E.2d 318 (1970); syl. pt. 6, *Cunningham v. County Court,* 148 W. Va. 303, 134 S.E.2d 725 (1964), but the burden of proving the plea bargain agreement and compliance with it were expressly placed upon the accused.

Although this Court has held that a plea bargaining agreement may be specifically enforced, *Brooks v. Narick* ___ W. Va. ___, 243 S.E.2d 841 (1978), "[s]pecific performance of a plea bargain is an available remedy only when the party seeking it demonstrates that he has relied on the agreement to a detriment and cannot be restored to the position he held before the agreement." Syl. pt. 1, *State v. Wayne,* ___ W. Va. ___, 245 S.E.2d 838, 841 (1978). The case before us is not the typical case where a defendant either wishes to withdraw a guilty plea or seeks to specifically enforce an agreement allowing him to plead guilty to a specific offense. In this case, the defendant seeks to terminate the prosecution of a crime.

In the instant case, the trial court did not in its order denying the special plea in bar make either findings of fact or conclusions of law, which would enhance the efficacy of appellate review. The trial court may have concluded the defendant's claim lacked merit either on the law or the facts; statements made by the trial court judge indicate, however, his ruling was based on the

---

[1] West Virginia's primary immunity statute, *W.Va. Code*, 57-5-2 authorizes only the court to grant immunity to a person compelled to testify as to self-incriminating testimony. A claim of immunity based on this statute may be raised by a special plea in bar. Syl. pt. 3, *State v. Sine,* 91 W. Va. 608, 114 S.E. 150 (1922).

conclusion that defendant's claim was not supported by law.

We hold, based on the previously-cited authorities, that law enforcement officers do not have authority to promise immunity from prosecution in exchange for information, and such promises are generally[2] unenforceable.

The credible testimony of the state tooper who admittedly made the no-prosecution promise supports the finding that the defendant's second statement implicating other persons, but not himself, in the commission of an extremely serious crime was given or made to a city police officer before the promise was communicated. The record in this case thus supports a finding by the trial court that the defendant did not meet his burden of demonstrating reliance to his detriment on the promise in making the second statement to law enforcement officials.

While it is no doubt true that the defendant provided information to the government, presumably helpful to federal officials prosecuting an important case, plead guilty to a federal firearms charge, and supplied information with respect to other crimes, this course of conduct does not necessarily indicate the defendant was acting in reliance on a plea bargain for immunity from state prosecution. In the guilty plea proceeding in federal court on the gun possession charge, the defendant testified that there had been no promises or agreements made which induced him to plead guilty. It is not unreasonable to assume that the defendant in making that statement before the federal court was telling the truth. Furthermore, he may have entered the guilty plea to the federal gun charge based on the advice of counsel and his own assessment of the case that it would be in his best interest to enter a guilty plea.

---

[2] We could envision a situation where a simple, unsophisticated person would, when accused of a crime, perceive the words of a law enforcement officer being spoken as the voice of a unitary state. That is not the case here.

Similarly, the defendant may have decided that it was in his best interest to cooperate with the local police officials in the hope that he would recieve some leniency on the armed robbery charge, particularly given the fact that just a few days before the statement was given the defendant was positively identified by two eyewitnesses as the armed robber.

*Affirmed.*