429 S.E.2d 56

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Angelo Maurice SHARPLESS, Defendant Below, Appellant.**

No. 21357.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1993.

Decided March 16, 1993.

Lisa A. Moncey, Asst. Atty. Gen., Charleston, for appellee.

Rebecca M. Bell, Bell & Griffith, Princeton, for appellant.

PER CURIAM:

The Appellant, Angelo Maurice Sharpless, appeals from an order entered by the Circuit Court of Mercer County on March 9, 1992, upholding a jury conviction for receipt of stolen property. Appellant assigns as error abuse of discretion on the part of the prosecuting attorney in charging him given an alleged agreement to the contrary, the improper admission of evidence, and ineffective assistance of counsel. Having fully reviewed the record in this matter and finding no reversible error, we affirm the decision of the circuit court.

The home of J. Harvey Lett was burglarized between the hours of 8:00 a.m. and 7:00 p.m. on June 11, 1991. Although Mr. Lett notified the police of the burglary on the evening of June 11, 1991, he did not discover until the following morning that several pieces of jewelry were missing. Among the missing items were a diamond Longiene watch and a diamond initial ring, both of which had Mr. Lett's initials inscribed thereon. After realizing the additional theft, Mr. Lett called several local jewelry stores in Princeton, West Virginia, to alert them to the possibility of someone attempting to sell his jewelry. One of the retailers with whom Mr. Lett spoke was Sheila Kennedy at J & J Jewelers. Mr. Lett asked Ms. Kennedy to contact him if anyone brought in jewelry for sale that fit the description of his watch and ring.

Around noon on June 12, 1991, Appellant entered J & J Jewelers with a diamond Longiene watch and a diamond ring, both of which were engraved with Mr. Lett's initials. Appellant initially handed Ms. Kennedy the ring to test the authenticity of the diamond encased within it. Ms. Kennedy tested the ring and informed Appellant that the diamond in the ring was real. Appellant then asked Ms. Kennedy if she could determine whether the diamonds in the watch were real. While examining the watch, Appellant asked Ms. Kennedy if J & J Jewelers purchased jewelry and she responded affirmatively. Explaining that she would have to remove the back from the watch to examine the diamonds around the watch face, Ms. Kennedy went to a back room in the store and called Mr. Lett's office pretending to offer the jewelry in sale. Mr. Lett notified the police and two officers arrived at J & J Jewelers within ten or fifteen minutes.

Ms. Kennedy turned the watch directly over to the police upon their arrival at the store. Officers Hudgins and LaRue proceeded to question the Appellant about the jewelry. The Appellant stated that the jewelry belonged to his grandfather. Appellant was arrested for receipt of stolen

property and taken to the station for interrogation by Detective Belcher.

Detective Belcher gave Appellant his *Miranda* rights [1] and later took a taped statement from him. The statement was suppressed based on the trial court's determination that sufficient guarantees of voluntariness were not present to warrant admission of the statement into evidence.[2]

While there is no question when and how the watch was placed in the custody of the police officers, there is some confusion regarding the circumstances surrounding their receipt of the ring. Officer Hudgins has no memory regarding removing or receiving the ring from the Appellant while in the jewelry store. At some point following the lawful arrest of Appellant, the ring came into the possession of Officer Hudgins as he prepared a descriptive tag for both the ring and the watch and placed both items in an evidence bag while Detective Belcher was interrogating Appellant. The trial court ruled, following much testimony, that because the arrest was lawful and because the stolen property at issue was easily identifiable due to the engraved initials of Mr. Lett on both items, there was no basis for excluding the ring from evidence pursuant to either an illegal arrest objection or a chain of custody objection.

After Appellant gave his statement to Detective Belcher on June 12, 1991, he was released. He was not charged with the felony of receiving stolen property at that time. Appellant contacted Detective Belcher twice via the telephone and once in person at the station with information concerning the commission of crimes. Detective Belcher states that Appellant did provide information regarding a stolen lawnmower, but no arrest was made based on that information. At some point, Appellant's parole officer notified Detective Belcher that Appellant could not continue to provide information to Detective Belcher because such acts violated Appellant's parole agreement by requiring him to associate with criminals.[3] Appellant was indicted on August 8, 1991, for the offense of receiving stolen property in violation of West Virginia Code § 61-3-18 (1992).

By order dated January 15, 1992, Appellant's original counsel withdrew and Rebecca Bell was appointed to represent Appellant. A suppression hearing was held on January 21, 1992, which resulted in a ruling that the taped conversation of Appellant would be suppressed. The trial on the charges of receipt of stolen property occurred on January 22, 1992. The jury found Appellant guilty of the charge of receipt of stolen property and Appellant was sentenced to not less than one nor more than ten years for the offense. The trial court denied Appellant's motion for acquittal or in the alternative motion for a new trial by order dated March 9, 1992. It is from that order that Appellant brings this appeal.

■ Upon examination, each of the three assignments of error identified by Appellant are without merit. Appellant argues initially that the prosecuting attorney abused his discretion by filing charges against him for receipt of stolen property, claiming that such act was in violation of an alleged agreement to the contrary. Appellant alleges that Detective Belcher

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The circuit court relied on the fact that there was a period of time prior to the taking of Appellant's statement during which Appellant and Detective Belcher discussed the possibility of an agreement being reached which would involve the supply of information by Appellant concerning other criminal activity in exchange for Detective Belcher's help in connection with the receipt of stolen property charge. Because this discussion concerning a possible agreement ensued prior to the taking of a taped statement from Appellant by Detective Belcher, the trial court was concerned that the statement had not been given freely, voluntarily, and independent of the discussion concerning the agreement.

3. Detective Belcher testified that he knew Appellant was on parole at the time he interrogated Appellant on June 12, 1991.

promised not to press charges against him for receiving the stolen property if he would provide Detective Belcher with evidence of other crimes. As evidence of this agreement, Appellant cites the fact that he was not processed[4] for the crime following his interrogation by Detective Belcher combined with the fact that only after his parole officer notified Detective Belcher that Appellant could not continue to act as an informant was he charged with the crime at issue.

Appellant suggests that the interrogation, followed by no immediate criminal processing, his cooperation with Detective Belcher, and the timing of when he was actually charged with the felony offense constitutes the requisite "substantial evidence" needed to document the alleged agreement. *State v. Wayne*, 162 W.Va. 41, 42, 245 S.E.2d 838, 840 (1978); *overruled on other grounds, State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983). In *Wayne*, this Court observed that

> [w]hile we recognize a plea bargain agreement may be specifically enforced in some instances, ..., that remedy is not available unless the party seeking specific performance demonstrates he has relied on the agreement to his detriment and cannot be restored to the position he held before the agreement. However, mere negotiation cannot be transformed into a consummated agreement merely by an exercise of the defendant's imagination. *While we do not require that a plea bargain agreement be written, although that is the far better course, we do require substantial evidence that the bargain was, in fact, a consummated agreement, and not merely a discussion.* Court approval, whether formal or informal is advised.

162 W.Va. at 42–43, 245 S.E.2d at 840–41 (emphasis supplied and footnotes omitted). Applying this standard to the facts in

*Wayne,* this Court reasoned that no agreement had been reached because "[n]o written bargain appears in the record; the terms of the alleged agreement are not developed; the defendant has given no evidence of reliance; and, the defendant has not shown that his position was irrevocably altered." *Id.* at 43, 245 S.E.2d at 841.

Like the defendant in *Wayne*, Appellant's evidence falls far short of the "substantial evidence" standard established in *Wayne. See* 162 W.Va. at 42, 245 S.E.2d at 840–41. In addition to the absence of a written agreement, the record is devoid of even one specific provision regarding the alleged agreement. Because Appellant chose not to testify, the only evidence proffered concerning the alleged agreement was the testimony of Detective Belcher at the suppression hearing that Appellant:

> told me he was on parole. He didn't want to go back to prison and that he could help me with some things that was goin [sic] on—some drugs and stuff. I relayed to him that I didn't work drugs, that we could probably work somethin [sic] out but I wanted to go ahead and take his statement now and then I'd talk to him about it later.

Detective Belcher also testified at the suppression hearing that

> [Appellant] said that he could help me solve some of those [burglaries], after I mentioned them. And I said well, I'll tell you what. I said, if you will help me with these, I'll see what I can do at a later date to try and help you when it comes down. I said, but I'm probably gonna have to go ahead and charge you with this, cause I'm gonna have to talk with the Prosecutor and see what he wants to do.

The record in this case suggests that at best there was some discussion concerning the exchange of information for possible leniency during the fifteen minute inter-

---

4. By processed, Appellant references the fact that he was not booked or fingerprinted, nor was a "CDR" filled out on him.

val[5] between the reading of *Miranda* rights to Appellant and the taking of his statement.

Even if Detective Belcher had wanted to enter into an agreement with Appellant, he was without authority to do so. As this Court recognized in the syllabus of *State v. Cox*, 162 W.Va. 915, 253 S.E.2d 517 (1979), "[l]aw enforcement officers do not have authority to promise that in exchange for information a person accused will not be prosecuted for the commission of a crime, and such a promise is generally unenforceable." Therefore, even if an agreement had been reached between Detective Belcher and Appellant it would be unenforceable.

Appellant conclusorily asserts that notwithstanding Detective Belcher's lack of authority, because he relied to his detriment on the alleged agreement, it is enforceable. We find no such evidence and accordingly rule that Appellant has failed to meet his burden of demonstrating detrimental reliance. *See Cox*, 162 W.Va. at 924, 253 S.E.2d at 521–22. Moreover, as we discussed in *Cox*, undertaking the role of a police informant "does not necessarily indicate the defendant was acting in reliance on a plea bargain for immunity from state prosecution." *Id.* at 924, 253 S.E.2d at 522. Appellant may have chosen on his own to supply the police with information, having decided that it was in his best interest to cooperate in the hope of receiving leniency. *See id.* As we noted above, the trial court ruled that Appellant's confession was inadmissible based on Detective Belcher's comments regarding possible leniency if Appellant cooperated by providing information about other criminal activity. *See* note 2, *supra.*

As his second assignment, Appellant asserts that the trial court improperly admitted evidence of the ring and accordingly, erred by not declaring a mistrial. Because the arresting officers cannot re-

member who obtained the ring from the Appellant, he contends that the ring was illegally seized. The facts of this case do not support this contention. Appellant was lawfully arrested at the jewelry store after the police officers received the watch from the clerk on the basis of probable cause and the ring was then obtained at some point after that arrest. Ms. Kennedy testified that upon being handed the jewelry by Appellant, she immediately noticed the engraved initials. The ring was the first of the two items examined by Ms. Kennedy. Following her inspection of the diamond, Ms. Kennedy handed the ring back to Appellant who remained in the store until his arrest. He was in the custody of the police when the ring was collected as evidence. Since no allegation of an unlawful arrest has been made, it appears that the ring was tendered to the police at some point incident to a lawful arrest.

Given the lawful arrest, Appellant's only legitimate objection concerning the ring's admission into evidence would be a chain of custody concern arising from the possibility of tampering, alteration or substitution. Yet, the ring is not prototypical of evidence which is subject to change. Mr. Lett's initials on the ring, which were observed by Ms. Kennedy upon her examination of the ring on June 12, 1991, and later used at trial by her to identify the evidence virtually eliminate the possibility of tampering, substitution, or alteration. Moreover, as this Court recognized in syllabus point seven of *Johnson v. Monongahela Power Co.*, 146 W.Va. 900, 123 S.E.2d 81 (1961), "[i]t is sufficient in order for an object to be introduced in evidence that such object be satisfactorily identified as being in substantially the same condition as at the time of the occurrence in question." Given that Ms. Kennedy identified the ring at trial as the same ring given to her on

5. While Appellant apparently places much importance on the fifteen minute time lapse prior to the taking of his statement, the lapse does not in and of itself prove that an agreement was reached. Detective Belcher explained that Appellant was upset at the prospect of returning to prison and was therefore giving a "sob story" in the hope of avoiding prosecution.

June 12, 1991, by Appellant and that the easily-identifiable ring remained in Appellant's possession at all times prior to the arrest, we conclude that the trial court did not abuse its discretion in failing to declare a mistrial on the grounds of improper admission of evidence.

Appellant also contends that the evidence was inadequate to support the verdict based on his position that the State failed to prove how he obtained the stolen property. We summarily dispense with this argument by referencing *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983), in which we stated that "[w]here circumstantial evidence concurs, as to time, place, motive, means and conduct, in pointing to the accused as the perpetrator of the crime, it is sufficient to support a conviction." *Id.* at 301, 305 S.E.2d at 257.

■ Appellant's final assignment of error is that he received ineffective assistance of counsel. His primary complaint stems from the fact that his trial counsel was appointed only seven days before the trial.[6] Notwithstanding the admittedly short period of time between her appointment and the trial, this Court's review of the record satisfies us that Ms. Bell "exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law." *State v. Thomas*, 157 W.Va. 640, 665, 203 S.E.2d 445, 461 (1974). Appellant contends that had Ms. Bell had more time to prepare for his case, she would have been successful in suppressing the ring from evidence. The record documents that Ms. Bell did contest the admission of the ring into evidence but as discussed above, there were no valid grounds for suppressing this evidence. Appellant also points to the fact that Ms. Bell struck the only black juror during voir dire. While Ms. Bell did strike this juror, the record reveals that she did so with the express concurrence of Appellant. As this Court observed in *Thomas*, "a defendant is not constitutionally guaran-

teed such assistance of counsel as will necessarily result in his acquittal." *Id.* at 666, 203 S.E.2d at 461. Like the first two assignments of error, Appellant's claim of ineffective assistance of counsel is similarly not substantiated by the record in this case.

Based on the foregoing, the decision of the Circuit Court of Mercer County is hereby affirmed.

Affirmed.

---

**6.** Appellant's prior counsel withdrew due to his unavailability for trial which was scheduled for

January 22, 1992.